DJG:2011R01039

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA  :  Criminal No. 13-537-01 (RmB)

       v.  :  18 U.S.C. § 1349

STEPHANIE MITCHELL  :  INFORMATION

## COUNT ONE

### (Conspiracy to Commit Mail Fraud)

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

At all times relevant to this Information:

1.    The Department of Education ("DOE") was a cabinet agency of the United States Government established to ensure equal access to education and to promote education throughout the United States. One of the primary responsibilities of DOE was oversight of the administration of Title IV Federal Student Assistance Programs ("FSA Programs") authorized by the Higher Education Act of 1965, as amended. Under the authority of Title 34, Code of Federal Regulations ("C.F.R".), Parts 600 and 668, DOE was responsible for determining the eligibility of institutions to participate in FSA Programs, as well as ensuring that those eligible institutions properly executed their

fiduciary responsibilities in administering the programs.  As part of these functions, DOE funded and administered FSA programs to assist qualified students or beneficiaries in obtaining college educations.

2.   Pursuant to 34 C.F.R. Part 600, to participate in FSA Programs, a school was required, among other things, to be accredited by a federally recognized accrediting organization also recognized by the Secretary of Education, and was required to enter into a Program Participation Agreement with DOE.  The school was also required to have been in existence for at least two years.  Part 600 of 34 C.F.R. further required that once a school was deemed eligible to participate in FSA Programs, it had to continually comply with eligibility requirements.

3.   DOE offered a number of financial aid programs to qualified students.  A student was required to meet the following criteria to be eligible to receive federal financial aid:

a.   Have a financial need (except for some loan programs);

b.   Have a high school diploma, General Education Development, or pass the Ability-to-Benefit Test or other approved programs not sponsored by DOE;

c.   Be enrolled or accepted for enrollment as a regular student at an accredited school working toward a degree or certificate in an eligible program at least

2

part-time;

    d.    Be a U.S. citizen or an eligible non-citizen;

    e.    Have a valid Social Security Number;

    f.    Make satisfactory academic progress;

    g.    Sign a statement on the Free Application for Federal Student Aid ("FAFSA") certifying that federal student aid will only be used for educational purposes;

    h.    Sign a statement on the FAFSA certifying that no federal student loans are in default status and that no money is owed back on a federal student loan; and

    i.    Register with the Selective Service, if required.

    4.    The Federal Pell Grant Program provided grants to eligible students in need of financial assistance to pursue post-secondary education at participating institutions. Pell Grants were made using DOE funds and were provided to students for educational purposes. On its own, an institution could electronically disburse Pell Grant funds to itself on behalf of eligible students. The Federal Pell Grant Program provided aid to eligible students in order to assist them with the cost associated with their education. This aid was in the form of grants and was not required to be repaid. Pell Grants were awarded to students who had not yet earned either bachelor or professional degrees.

5. Student loans, unlike grants or work-study, were borrowed money that must be repaid, with interest. There were several types of loans including Stafford Loans for undergraduate or graduate and professional students made through one of DOE's programs. After a student completed the FAFSA, the student was required to complete a Federal Stafford Loan Application and Promissory Note, and provide the completed form to the school the student planned to attend. After the school completed its portion of the application, then either the student or the school, on the student's behalf, was required to send the application to the lender for evaluation. The loan was insured by state or private nonprofit guaranty agencies that were reimbursed by the federal government for all or part of the insurance claims paid to lenders. This government guarantee replaced the collateral or security usually required with long-term consumer loans.

6. To start the financial aid process, a student was required to complete and submit a FAFSA via FAFSA on the Web at fafsa.ed.gov, or a paper version. After the submitted application was received by DOE's Central Processing System ("CPS"), CPS calculated the FAFSA application information submitted by the student using the appropriate federal methodology to produce the Estimated Family Contribution and also performed data matching with various other Federal Agencies to

4

confirm eligibility requirements. The CPS then electronically issued an International Student Information record to the schools the student listed on the FAFSA.

7.   In order to electronically sign the FAFSA, each applicant was issued a unique PIN number by DOE.  The applicant was required to wait for the PIN to be sent to him or her by electronic mail or postal mail.  The applicant then would return to FAFSA on the Web and sign the application with the PIN.

8.   In order for DOE to test the accuracy of the information submitted on the FAFSA, and thus ensure the integrity of the student financial aid programs, at least 30 percent of all FAFSAs were checked by DOE through a random automated process called Verification.  Schools were authorized to collect certain documentation for review in order to complete this process.  If the information submitted conflicted with the information provided on a FAFSA, schools were authorized and obligated to make a correction to the FAFSA before financial aid eligibility could be accurately determined and funds awarded.  The Secretary had determined that the following information was subject to verification: income; household size; marital status; public assistance benefits; child support; foreign income; and other untaxed income.

9.   To ensure DOE funds were used for educational purposes, the financial assistance funds were sent from DOE, or the commercial lender, directly to the institution where the student was enrolled.  DOE funds were then held by the institutions in trust for the benefit of the student.  Institutions had the authority to apply the loans received from DOE to a student's cost of attendance account and to disburse any excess funds to the student.

10.   American Public University ("American") was an accredited educational institution physically located in Charles Town, West Virginia.  American utilized an online classroom format to deliver instruction.  American was approved by DOE to administer FSA Programs.

11.   Liberty University ("Liberty") was an accredited educational institution physically located in Lynchburg, Virginia.  Liberty utilized an online classroom format to deliver instruction.  Liberty was approved by DOE to administer federal FSA Programs.

12.   Generally, once a student had been formally admitted to American or Liberty, and the student's Stafford Loan had been approved, any approved funds in excess of the funds required to pay for a student's cost of attendance were disbursed to the individual student in the form of a credit balance check or debit card issued in the student's name for the account balance.

6

13.   Defendant STEPHANIE MITCHELL and others engaged in a mail fraud scheme and artifice to defraud and to obtain funds from DOE totaling at least $272,247.

14.   From at least as early as on or about August 19, 2010 through on or about March 21, 2012, in Bergen County, in the District of New Jersey, and elsewhere, the defendant,

**STEPHANIE MITCHELL,**

R.M., and others did knowingly and intentionally conspire and agree with each other and others to devise a scheme and artifice to defraud DOE, and to obtain money and property, namely, credit balance checks and debit cards issued in the name of individuals, by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice, caused matter to be placed in a post office or authorized depository for mail, and placed with a private or commercial interstate carrier, to be sent or delivered by the Postal Service or private or commercial interstate carrier, and to be taken or received from the Postal Service or private or commercial interstate carrier, contrary to Title 18, United States Code, Section 1341.

## The Object of the Conspiracy

15.  The principal object of the conspiracy was for defendant STEPHANIE MITCHELL, R.M., and others to fraudulently obtain DOE funds to which they were not entitled so they could use these funds for their personal use, by falsely stealing identities and using the stolen identities to obtain student loans to which the co-conspirators were not entitled, by representing that defendant STEPHANIE MITCHELL was an individual named "H.S.," by using the name and driver's license of "H.S." to apply for and obtain a box at a UPS Store located in Montvale, New Jersey (Box #182 and/or the "UPS Store"), and by contacting Liberty or American and posing as students for whom student loans had been issued to cause the proceeds of numerous credit balance checks and debit cards to be redirected to the UPS Store and a vacant house located in  Stroudsburg, Pennsylvania ("5 Phyllis Court") and other locations.

## The Means and Methods of the Scheme to Defraud

16.  In furtherance of this scheme and to effect its object, defendant STEPHANIE MITCHELL, R.M., and others employed various means and methods, including those set forth below.

17.  On or about August 19, 2010, posing as an individual named "H.S." and using a fraudulently obtained driver's license, defendant STEPHANIE MITCHELL rented Box #182 at the UPS Store.

8

18.   On or about October 24, 2011, R.M. caused an application for admission to be submitted to American in the name of an actual individual named "L.O.," which application contained the actual name, Social Security number, and address in Chicago, Illinois of "L.O."

19.   On or about November 2, 2011, R.M. caused an application for federal financial aid to be submitted via a FAFSA in the name of "L.O."

20.   23.   On or about November 14, 2011, defendant STEPHANIE MITCHELL and R.M. caused a business checking account to be opened at Bank of America in the name of "R.A., Student Services of Greater Utah."

21.   On or about December 15, 2011, defendant STEPHANIE MITCHELL and R.M. caused a credit balance check issued in the name of "D.D." care of "H.S." to be mailed from American to the UPS Store and to be deposited into the "R.A., Student Services of Greater Utah" account.

22.   On or about December 22, 2011, defendant STEPHANIE MITCHELL and R.M. caused a credit balance check issued in the name of "D.D." care of "H.S." to be mailed from American to the UPS Store and to be deposited into the "R.A., Student Services of Greater Utah" account.

23.  On or about December 22, 2011, defendant STEPHANIE MITCHELL and R.M. caused a credit balance check issued in the name of "C.T." care of "H.S." to be mailed from American to the UPS Store and to be deposited into the "R.A., Student Services of Greater Utah" account.

24.  On or about December 26, 2011, defendant STEPHANIE MITCHELL and R.M. caused a credit balance check issued in the name of "A.R." care of "H.S." to be mailed from American to the UPS Store and to be deposited it into the "R.A., Student Services of Greater Utah" account.

25.  On or about January 7, 2012, after being advised that the student loan in the name of L.O. had been approved, R.M. caused an email to be sent to American instructing American to mail the credit balance check issued in the name of "L.O.," not to the address of "L.O." in Chicago, Illinois, but instead to Box #182 at the UPS Store.

26.  On or about January 11, 2012, per its contract with DOE, American mailed a credit balance check issued in the name of "E.C." care of "H.S." to the UPS Store.

27.  On or about January 27, 2012, R.M. made a telephone call to American, and identifying himself as "C.D.," asked that the credit balance check issued in the name of "C.D." be mailed to 5 Phyllis Court.

10

28. On or about February 1, 2012, R.M. made a telephone call to PPL, Electric Utilities Corporation, identifying himself as "R.A.," and asked to have the power turned on at 5 Phyllis Court.

29. On or about February 1, 2012, defendant STEPHANIE MITCHELL made a withdrawal at the Embassy Bank, in Easton, Pennsylvania from a Liberty debit card issued in the name of "C.B." that had been mailed to 5 Phyllis Court.

30. On or about February 9, 2012, defendant STEPHANIE MITCHELL made a withdrawal at a WEIS Supermarket, in Stroudsburg, Pennsylvania from a Liberty debit card issued in the name of "E.C." that had been mailed to 5 Phyllis Court.

31. On or about February 23, 2012, defendant STEPHANIE MITCHELL caused an email to be sent to the UPS Store from: sannheather@yahoo.com. which stated: "Hi! How much is my box? I want to pay by credit card....XXXXXXXXXX 4795, expiration date 07/15, CVV XXX and billing zip of 08630."

32. On or about March 21, 2012, R.M. attempted to pick up the mail that was in Box #182 at the UPS Store.

In violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

33.  As the result of committing the mail fraud conspiracy offense in violation of 18 U.S.C. §§ 1341 and 1349, alleged in Count One of this Information, defendant STEPHANIE MITCHELL shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C § 2461, all property, real and personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offense, to wit, a sum of money equal to $272,247.75, representing the amount of proceeds obtained as a result of the said offense.

### Substitute Asset Provision

35.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled, pursuant to Title 21, United States Code, Section § 853(p), to seek forfeiture of any other property of defendant STEPHANIE MITCHELL up to the value of the above forfeitable property.

All pursuant to 18 U.S.C. § 981(a)(1)(c), 21 U.S.C.§ 853(p) and 28 U.S.C. § 2461.

PAUL J. FISHMAN
United States Attorney

CASE NUMBER:

## United States District Court District of New Jersey

UNITED STATES OF AMERICA

v.

STEPHANIE MITCHELL

# INFORMATION FOR

18 U.S.C. § 1349

PAUL J. FISHMAN

*UNITED STATES ATTORNEY, NEWARK, NEW JERSEY*

Deborah J. Gannett

*ASSISTANT U.S. ATTORNEY*

*NEWARK, NEW JERSEY*

*(973) 645-2781*